Honorable Georgia Gardner State Representative, 42nd District PO Box 40600 Olympia, Washington 98504-0600
Dear Representative Gardner:
By letter previously acknowledged, you have requested our opinion on a question we have paraphrased as follows:
 When a city has conducted an election on the question of abandonment of plan of government pursuant to chapter 35A.06 RCW, and the result of the election was to retain the city's current plan of government, does the statute require a six-year wait before another election of the same type can be conducted?
 BRIEF ANSWER
The brief answer to your question is no. The law requires a city to operate under a particular plan of government for six or more consecutive years before conducting an election on the question of abandoning or changing the plan of government. The law limits the frequency of changing plans of government, not the frequency of elections on the question.
 ANALYSIS
Your questions are about cities operating under the Optional Municipal Code, codified as Title 35A RCW. Cities organized under this Title may operate under any of several plans of government. A city may determine its own plan of government by adopting a charter. RCW 35A.08. An existing city may become a noncharter code city (RCW 35A.02) or a new city may incorporate as a noncharter code city (RCW 35A.03). Noncharter code cities have two basic choices for plan of government. Chapter 35A.12 RCW describes a mayor-council plan of government and chapter 35.13 RCW describes a council-manager plan of government. Upon becoming a noncharter code city, a city may select either of these two plans.
The subject of your question is chapter 35A.06 RCW, which provides a city with a way of changing its plan of government if for some reason it wishes to reconsider its initial choice. RCW 35A.06.030
provides in relevant part as follows:
 By use of the resolution for election or petition for election methods described in RCW 35A.06.040, any noncharter code city which has operated for more than six consecutive years under one of the optional plans of government authorized by this title, or for more than a combined total of six consecutive years under a particular plan of government both as a code city and under the same general plan under Title 35 RCW immediately prior to becoming a code city, may abandon such organization and may reorganize and adopt another plan of government authorized for noncharter code cities, but only after having been a noncharter code city for more than one year or a city after operating for more than six consecutive years under a particular plan of government as a noncharter code city. . . .
RCW 35A.06.030. (Emphasis added.)
RCW 35A.06.040 describes the two methods by which this "abandonment" election process might be commenced: (1) enactment of a resolution of the city's legislative body, or (2) the filing of a petition with the county auditor signed by registered voters in numbers equal to not less than ten percent of the votes cast at the last general municipal election. The resolution or the petition proposing the change must state the new plan under which the city would operate instead. Pursuant to RCW 35A.06.050, if either of these two events occurs, an election is held, either at the time for the next general election or at a special election, depending on the circumstances. If a majority of the voters approve the proposition, the city's old plan of organization is abandoned and the city is then governed by the new plan approved by the voters. RCW 35A.06.060.
Your question is based upon the experience of a noncharter code city which recently conducted an election pursuant to the statutes cited above. The proposition voted on did not achieve a majority of the vote, so the city retained its pre-existing plan of organization. However, advocates of a change in plan of government immediately began circulating a petition for a new election the following year. In effect, they have requested a revote on the same question. Your question is whether a city in such a circumstance must (assuming the petition gains the requisite signatures and is properly filed) conduct another election on the same question.[1]
Chapter 35A.06 RCW contains no language restricting the frequency of elections on the subject of a change in plan of government. RCW35A.06.030 contains a restriction that before considering a change in plan of government, a noncharter code city must have:
 . . . operated for more than six consecutive years under one of the optional plans of government authorized by this title, or for more than a combined total of six consecutive years under a particular plan of government both as a code city and under the same general plan under Title 35 RCW immediately prior to becoming a code city. . . .
RCW 35A.06.030.
If a city conducted an election last year under this provision, it presumably, as of that time, had met this "more than six consecutive years" requirement. If the election resulted in no change in plan of government, and the issue comes up again this year, the city has operated for one year longer under its current plan of government and certainly continues to meet the "more than six consecutive years" requirement. There is no language in this chapter, nor could we find any elsewhere in statute, attaching consequences to a vote against a change in plan of government, or limiting the frequency of elections on this subject. Rather, the purpose of the cited language in RCW 35A.06.030 appears to be to spare the city the disruption of actually changing its plan of government more frequently than every six years.[2]
Accordingly, we find no language requiring any particular passage of time after an election is held pursuant to chapter 35A.06 RCW and the time that another election under this chapter is proposed. So long as a city has operated under the same plan of government continuously for more than six years, either the legislative body or the voters may initiate a proposal for a change, no matter how recently or how frequently such a change has been rejected before. If the vote for a change is successful and the city does in fact change its plan of government, then and only then does a new "six year" clock begin to run.
We trust the foregoing will be useful to you.
Very truly yours,
CHRISTINE O. GREGOIRE
JAMES K. PHARRIS Sr. Assistant Attorney General
[1] The new petition could be identical to the previous one, or it could propose yet a different alternative plan of government not yet considered. The analysis would be the same in either case.
[2] The language in question dates from the original Optional Municipal Code adopted as Laws of 1967, Ex. Sess., ch. 119. Legislative history from this period is sparse, and we could find nothing shedding light on this particular detail. RCW 35A.06.030
was amended in 1971 (Laws of 1971, 1st Ex. Sess., ch. 251, § 13) and in 1979 (Laws of 1979, 1st Ex. Sess., ch. 18, § 14), but both of those amendments were "clarifying" or "housekeeping in nature" and generated no legislative history that is helpful in addressing your question. The 1994 legislature also amended this section (Laws of 1994, ch. 81, § 69 and Laws of 1994, ch. 223, § 28), but these amendments concerned details not relevant to our analysis. We also note that Chapter 35A.06 RCW has never been construed by the appellate courts of the state or by our office in a previous opinion.